(135 So. 577)

## BRASSELL v. BRANDON, State Auditor.

### 3 Div. 963.

Supreme Court of Alabama.

June 25, 1931.

Brassell & Brassell, of Montgomery, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and A. A. Evans, Asst. Atty. Gen., for appellee.

THOMAS, J.

The question is raised by demurrer to the answer—the facts and denials thereof. The trial court overruled the demurrers of petitioner thereto, and the latter took issue upon such denials of the answer that did not admit the allegations of the petition.

Were the allegations of fact contained in the answer proved by the testimony of the petitioner, L. H. Brassell, and by the exhibits introduced in evidence and admitted by him in his testimony to be correct, sufficient to deny relief?

The petition alleged, in substance, that petitioner, on the 18th day of April, 1927, was appointed an associate member of the state tax commission by the Governor, Hon. Bibb Graves; that he duly qualified and entered upon the discharge of the duties of that office, and continued to discharge its duties to and including the 20th of January, 1931; that petitioner did not receive a warrant from the state auditor, on the state treasury, for salary for the months of May, June, July, and to the 15th day of August, 1930, amounting in the aggregate to $1,166; that due demand on the auditor for such warrant was made and there was failure and refusal to issue.

The answer admits petitioner's due appointment, that he qualified as alleged, and had not been paid salary for the time named; denied that petitioner discharged all duties of said office from May 1, 1930, to August 15, 1930, the period for which petitioner was not paid by the state or its officials. The answer further alleges that on, to wit, April 24, 1930, petitioner addressed a letter to the Governor in words as follows:

"April 24th, 1930.

"Hon. Bibb Graves, Governor.

"Dear Governor:

"As you know, I am a candidate for the office of Attorney General and I desire to ask of your Excellency a leave of absence from May 1st to August 15th, 1930. Trusting your Excellency will grant this request, I beg to remain,

"L. H. Brassell, Associate Commissioner."

That to this letter the Governor replied in words as follows:

"April 30th, 1930.

"Hon. L. H. Brassell,

"Associate Commissioner,

"The State Tax Commission,

"Capitol.

"Dear Sir:

"I have yours of the 24th advising me of your candidacy for the office of Attorney General and asking for leave of absence without pay pending the campaign. I heartily approve your action and assure you that your request is granted and that when the campaign is over, irrespective of the outcome, you will be gladly welcomed back to the position which you have filled with credit to yourself and benefit to the State.

"Sincerely, Bibb Graves, Governor."

The answer alleges that petitioner accepted and acted upon the provisions of said reply; that defendant is advised by the present Attorney General of Alabama that the legal effect of said letter by petitioner, and the letter of reply thereto by the Governor, when accepted and acted upon by petitioner, operated as a removal from office for the time indicated by said Governor, or as an abandonment by petitioner of the office of associate member of the state tax commission, during said period.

The answer further alleges that due to this understanding between the Governor and petitioner, no salary was requested by petitioner for the period, to wit, from May 1st to August 15th, of the state auditor, until the latter part of the term of office of the Governor; that in accordance with the provisions of the said letter of the Governor on, to wit, August 15, 1930, the Governor did "gladly welcome back to the position of Associate Member of

the State Tax Commission" the petitioner, and that, thereafter, petitioner, as associate member of the state tax commission, and during the remainder of the term of the said Governor, was regularly paid the salary provided by law for an associate member of the state tax commission.

The question then recurs: Was said L. H. Brassell, the petitioner, an associate member of the state tax commission from May 1, 1930, to August 15, 1930, or did his action by and with the consent of the Governor amount to a temporary removal from office, or a failure to discharge the duties of that office as required by law, though he discharged some duties thereof? The witness stated as to this:

"During this period of time I was called back to appear as a member of the State Tax Commission in Birmingham wherein the Hill Gro. Co. was before that commission on the question as to an inspection of their books. Before I left on this leave of absence I stated to the chairman and associate members that any time they needed me to call me; that I would not suffer the State's business to lag, the important matters; that is, hearings, and so forth. I think it was—I am not sure about this, as to the dates. I think it was about the last of May, sometime in the month of May, I happened to be in Troy, and Mr. Moore— Mr. Frontis Moore, who was an associate member of the State Tax Commission—called me for the Commission and suggested that I appear in Birmingham the following week. I don't remember what week that was. I was ordered. However, some days elapsed between that time and the time I was to appear in Birmingham and I went down in Geneva and Houston Counties. I remember that distinctly—and the day previous to the time that I was to report to Birmingham I drove my car, from either one of these places. I don't remember where it was; my recollection is that it was old Columbia, in Houston County—I drove home, spent that night at home, and then came in here (Montgomery) and spent the night here, caught the bus out early the following morning and went to Birmingham in obedience to the orders that I had received, *and when I came back to Montgomery, filed my expense account, with the secretary of the State Tax Commission, which was duly forwarded and paid by the State.* There was not a time when I was in Montgomery, passing through, but what I would go to the Tax Commission, some member, or probably two or three at a time, and suggest to them that any time they needed any hearing, to let me know, and I would be present. So I went there in the discharge of that duty. It was in the month of May. [Italics supplied.]

"Question: 'During the time you were absent, did you at week-ends go back to the Capitol and look over your personal matters?'

"Witness answered: 'I would not say at week-ends, because I was sometimes gone two weeks; but I will say this: Never at any time, except one occasion when I was taken sick, that I did not come and make inquiry about matters.'

"Question: 'The official duties?'

"Answer: 'Yes.'

"Question: 'Examine your official mail?'

"Answer: 'Yes.'

"Mr. Mooring was Chief Clerk, and sometime there were matters addressed to me personally that he could not open; that was the reason I would go to look over such matters.

"Question: 'Mr. Mooring: That was his duty, even when you were personally present, to open the mail?'

"Witness answered: 'Yes, sir, except when mail was personally directed to me, and sometimes there was personal mail directed to me that was in the public business.' * * *

"I came back at the request of the State Tax Commission, as I said. I said Mr. Frontis H. Moore, who told me he was acting for the Commission. He told me this over the 'phone. He directed me to go to Birmingham in connection with the Hill Grocery Company hearing. Judge (Evans) you remember about that hearing. My best judgment is that this was about the latter part of May—I would not be sure, it may have been in the month of June, I was there one day. That is I was in Birmingham one day. It took me a day and night to get there. I did not go on any other matter. * * *

"During these three months I did not make any request for pay. I don't think I was acting upon the reply of the Governor permitting absence without pay, I don't think I was acting on that. I accepted it and went on with my campaign, but with the understanding with the chairman and associate members that at any time they needed me I would be present, to let me know; and every time I passed through Montgomery, either going or coming, I would stop and make inquiry, and sometime read mail. There was no further understanding with the Governor except the correspondence. That is all that occurred between the Governor and myself."

Several questions of fact and law are established. That is to say:

1. The petitioner held the office of associate member of the "New State Tax Commission" at the will of the Governor. Act approved February 3, 1923, Acts 1923, p. 14, §§ 1, 2.

2. The words "term of office," when used in the act in reference to the tenure of office of the five commissioners provided by the act, have not the meaning as ordinarily employed, and had not a fixed and definite time as applied to certain elective and ap-

pointive offices; these commissioners "held at the pleasure of the appointing power." 8 Words and Phrases, First Series, p. 6920, and authorities cited.

■ 3. As the words "term of office" are ordinarily used, petitioner held no such term of office; he had a tenure in office, at and subject to the will of the Governor. The act provides: "The term of office of each of the members of said Commission shall be at the will of the Governor. * * * In case of a vacancy in said State Tax Commission, caused at any time by death, resignation, removal or otherwise, the vacancy shall be filled by appointment of the Governor, and the appointee shall hold office only at the will of the Governor." The question recurs: Did the petitioner, at the will of the Governor, or with his consent, take a leave of absence from the duties of the office of associate member of the state tax commission, without pay, and did this, in legal effect, mean that his tenure in office was discontinued and the salary for the time suspended though provided by law?

■ 4. We have indicated that the office of associate tax commissioner had no term. It was held at the will of the Governor. It consisted of certain duties to the state to be performed, with pay therefor, as provided by the act. It was in the power of the Governor to relieve petitioner from both. He could not relieve from one and command and have the other. The petitioner did not give the state for the time, full service as contemplated by the law, his appointment and qualification.

■ 5. In recognition of the fact that an associate member of the state tax commission had no term of office, but held at the will of the appointing power, though with a fixed compensation, the revenue act, approved August 22nd, 1923, by section 65 thereof (Acts 1923, p. 184), adopted after the act providing for the appointment of a commission or commissioners, provided "the associate members of the State Tax Commission shall receive each a salary of four thousand dollars ($4,000) per annum *for the time that he actually holds office*, such salaries to be paid out of the State treasury in the same manner as the salaries of other State officials are paid." (Italics supplied.) "Actually holds office" means the discharge of the duties thereof after due appointment and qualification, as required by law, subject to removal at the will of the appointing power. Touart v. State ex rel. Callaghan, 173 Ala. 453, 56 So. 211; Williams, Judge, v. Schwarz, 197 Ala. 40, 72 So. 330, Ann. Cas. 1918D, 869; Nolen's Case, 118 Ala. 154, 24 So. 251.

■■ 6. Where a person in office under the act in question, with assent of the Governor, leaves the discharge of the duties of his office for the time indicated, such person cannot be regarded as "actually" holding office for such period or discharging its duties in the sense required by law. Having absented himself, without lawful excuse, from the full-time discharge of the duties of or to be rendered in said office, and that absence being by and with the consent of the Governor, the petitioner will be held to have abandoned his office, and during the period of his absence was in legal effect temporarily removed from office by the Governor.

The judgment is therefore affirmed.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.