198 So. 231

### DOWNS v. CITY OF BIRMINGHAM.
### 6 Div. 710, 710A.

Supreme Court of Alabama.

Oct. 17, 1940.

180

Horace C. Wilkinson, of Birmingham, for appellant.

John S. Foster, of Birmingham, for appellee and cross-appellant.

182

**FOSTER, Justice.**

The questions which have primary consideration on this appeal are in respect to the force and effect of the "Sparks" Amendment to the Constitution. XXVI A, Article XXIV, Skinner's Alabama Constitution, page 991.

The argument is in two phases: 1. The validity of the amendment in so far as it purports to suspend all provisions of the Constitution which prohibit or restrict the legislature from decreasing or diminishing the salary of a public officer of the State, county or city, from September 1, 1933 (when, according to its terms, it had operation—since it was proclaimed to be ratified on August 2, 1933), until October 1, 1935.

2. The validity of it in so far as it purports to put a limitation of $6,000 on the salary of a city officer whose salary had been fixed by law (section 19, Act of August 15, 1923, Gen.Acts 1923, page 121), and was not subject to change by virtue of vested rights declared in sections 68 and 281, Constitution.

We accept the contention in the argument as made in both phases that the amendment has controlling influence. Appellant was elected to the office and began its service after the date when the amendment by its terms began to function.

The first phase of the argument has been often mentioned in our cases, but not given direct discussion or authoritative decision by this Court. But we have in several of them, without argument, treated the amendment as effective as against such claim. Storrs v. Heck, 238 Ala. 196, 190 So. 78; Houston County v. Martin, 232 Ala. 511, 169 So. 13; State v. Stone, 235 Ala. 233, 178 So. 18; State Docks Comm. v. State, 227 Ala. 521, 150 So. 537. In Houston County v. Martin, supra, some of the Justices expressed the opinion that the amendment was ineffective, but the majority did not concur, and the case was disposed of on other grounds. There is also in State Docks Comm. v. State, supra, a dissenting opinion by Special Justice Johnston, but he was of the opinion that it is effective as against such an attack. The dissent was not on that point. The majority did not treat that subject.

It is argued that a suspension of certain unnamed sections or features of the Constitution is not such an amendment as may be made in the mode provided for in Article XVIII, Constitution, beginning with section 284. That article is confined to the procedure to be pursued in amending the Constitution, assuming that the amendment is one which is permissible. Section 2 of Article I of the Constitution is the only one which specifically authorizes an amendment. That section in full is as follows: "Sec. 2 That all political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit; and that, therefore, they have at all times an inalienable and indefeasible right to change their form of government in such manner as they may deem expedient."

We can better treat the whole subject of amendments together, including the suspension feature of it, and the power to abrogate rights otherwise created by the Constitution itself.

Section 2, Constitution, is substantially the same as it appeared in all former constitutions of the State. See Skinner's Alabama Constitution, pages 44 and 45.

■ The mode of making amendments is mandatory and exclusive. Houston County v. Martin, supra; Johnson v. Craft, 205 Ala. 386, 87 So. 375; Collier v. Frierson, 24 Ala. 100.

■ But the character or nature of an amendment is not prescribed. It may extend to a "change [in the] form of [the] government." Section 2, Constitution. This may be in any respect, except that it must continue to be a "republican form", Article IV, section 4, Constitution of the United States; Luther v. Borden, 7 How. 1, 12 L.Ed. 581, must not impair the obligations of contracts, nor otherwise violate section 10, Article I of the Constitution of the United States, nor violate the Fourteenth Amendment of the Constitution of the United States, nor any other provision of it.

■ True, a constitutional convention cannot enact a law to be effective without

incorporating it in the Constitution for ratification by the people. Ex parte Birmingham & Atlantic Ry. Co., 145 Ala. 514, 42 So. 118. But it may insert in the Constitution self operating provisions of a legislative character. Miller v. Marx, 55 Ala. 322, 332; 6 R.C.L. 58, note 13; 12 Corpus Juris 731, 16 C.J.S., Constitutional Law, § 49, p. 101.

Except as thus restricted, there is no limitation on the power to amend or re-write the Constitution. Black on Constitutional Law, section 28, page 51; 16 Corpus Juris Secundum, Constitutional Law, §§ 7, 39, pages 29, 80; Collier v. Gray, 116 Fla. 845, 157 So. 40; 11 Am.Jur. 628; Scruggs v. Mayor, etc., Huntsville, 45 Ala. 220, 223.

Every proposal which effects a change in the Constitution or adds or takes away from it is an amendment. 16 Corpus Juris Secundum, Constitutional Law, § 7, p. 31; 11 Am.Jur. 629, sections 24–25. It need not be germane to any other feature of it, nor to the feature which is thus amended, provided it is clear and definite in its provisions. 16 Corpus Juris Secundum, Constitutional Law, § 7, p. 31.

There is nothing said in any of the authorities of a limitation on this power to suspend a feature of the Constitution for a definite period, so as to take it out of the Constitution during that period and to put it back in at the end of that period, all in one process. But the all inclusive power to amend by taking out and adding features would logically include this power when its meaning is clear and definite, and adopted strictly in the mode provided by the Constitution.

As here applied, it means that there shall be expunged from the Constitution all those features of sections 68, 118, 150 and 281, or elsewhere if there are any, which prohibit the legislature from diminishing the salary, fees and compensation of public officers there mentioned, and that there is fixed a maximum of $6,000 per annum for any of them, but that after October 1, 1935, all those features shall be automatically reinserted and continue thereafter as though they had never been expunged. Unless there is some other prohibition somewhere, such a "change [in the] form of government," which is said by section 2, Constitution, to be an "inalienable and indefeasible right," is inherent in the people.

Appellant contends that the benefits of sections 68, 118, 150 and 281, Constitution, are themselves inviolate, and that they cannot be affected by a subsequent constitutional amendment. He concedes that the salary of a public officer is not a contract, and that the office, if statutory, may be abolished without infringing upon the rights of the officer. But he argues that when the office continues the rights under the above sections which are inviolate by their very terms, continue to exist, and are not subject to constitutional change. This is of course true in so far as any subsequent legislation is concerned, when not authorized by an amendment to the Constitution. But all rights acquired under the Constitution are subject to the further provision of it which permits an amendment extending even to that exact right thus acquired, subject to the restrictions of the Federal Constitution, to which we have referred. No right can be acquired under the Constitution which cannot be abrogated by an amendment of the Constitution, in so far as that Constitution is concerned. This extends to contract and property rights, and would be effective in that respect but for the Constitution of the United States, which imposes a limitation on the state's power to that extent, whether manifested by the state's Constitution and amendments of it or by state legislation.

It has been seriously attempted to exempt from the operation of that principle the features of what is called in the Constitution the "Bill of Rights," such as is embraced in the first thirty-six sections of our Constitution, which comprise Article I of it. Emphasis has been placed on the last clause of that section, which is as follows: "and, to guard against any encroachments on the rights herein retained, we declare that everything in this Declaration of Rights is excepted out of the general powers of government, and shall forever remain inviolate." This was not in the Constitution of 1875 or 1868, but was in those of 1865, art. 1, § 36, 1861 and 1819, art. 1, § 30, with the added clause in them as follows: "and that all laws contrary thereto, or to the following provision, shall be void." This does not appear in the Constitution of 1901. See, Skinner on Alabama Constitution, page 223.

We have no case in Alabama which undertakes to express the meaning of that status of the Constitution as it now

appears in the light of its history, shown above. That it is a limitation on legislation only is clearly shown by the clause in the Constitution of 1865, 1861 and 1819, copied above. Its omission from the Constitution of 1901 is not persuasive that it was intended to prohibit any change in the Bill of Rights by constitutional amendment. Such a clause as that now appearing in section 36, Constitution, has been treated by some authorities in respect to the question of whether it is a limitation on constitutional amendment.

It seems that Arkansas has held that a natural right secured by the Bill of Rights is immune from impairment by subsequent constitutional amendment. Eason v. State, 1851, 11 Ark. 481. But it was pointed out in Ex parte Kerby, 103 Or. 612, 205 P. 279, 36 A.L.R. 1451, that the Constitution of the state of Arkansas, permitted the legislature to amend the Constitution by observing a prescribed procedure without submitting it to the people. And its interpretation of that power is sharply criticised in Jameson on Constitutional Conventions. Section 554, pages 584 et seq. This is considered by this Court high authority on the subject. See, Ex parte Birmingham & Atlantic Ry. Co., supra, in which Justice Anderson reviews the value of this work. We are clear that it does not put a limitation on the power of amendment of the Constitution, but on the power of legislation.

We find no other feature of the Constitution which is supposed to limit the nature of amendments to it affecting this question.

In discussing the power to amend the Bill of Rights, no one has seemed to question it except as limited by the feature to which we have referred. In no quarter can we find a denial of the power to amend the Constitution by depriving one of rights created by it, except as prohibited by the Constitution of the United States. Certainly rights under sections 68, 118, 150 and 281, are no more inviolate than those under the Bill of Rights, in so far as the power to amend them is concerned in respects not controlled by the Constitution of the United States.

It is however remembered that the amendment was in effect when appellant was elected, and it did not therefore decrease his salary during the term to which he had been elected. Thomas v. Gunter, 170 Ala. 165, 54 So. 283; State Docks Comm. v. State, 227 Ala. 521, 150 So. 537; Hawkins v. Jefferson County, 233 Ala. 49, 169 So. 720.

But the idea of appellant in this connection seems to be that under sections 68 and 281, Constitution, appellant had a vested right to the salary fixed by law as it accrued. But when he was elected to the office the amendment had become operative and changed the status theretofore existing. As applied to appellant, sections 68 and 281, as here material, were not in the Constitution when he was elected and remained out of it until October 1, 1935, when they went back in. When he was elected, he knew what the status was in that respect and served under the only law then existing which fixed his salary at $6,000. Section 19 of the Act of August 15, 1923, page 121, was thereby amended in so far as it was conflicting.

But assuming that the amendment served to decrease appellant's salary during the term and after his election, contrary to sections 68 and 281, we think there is no valid reason why this cannot be done by such an amendment duly adopted as provided in the Constitution, since it would not infringe any guaranty of the United States Constitution.

It is also insisted that the Sparks' Amendment is not self executing so as to apply to offices theretofore created by law providing for a fixed salary, but only to new offices created by law while it was operative. Its terms certainly include the salaries of existing officers. A constitutional provision is not necessarily, nor always, as we have shown, a limitation or grant of power though such is its primary and chief purpose. It is sometimes self executing and legislative in character, and is so when it is complete in itself and becomes operative without the aid of supplementary or enabling legislation. In re Opinions of Justices, 227 Ala. 291, 149 So. 776; 16 Corpus Juris Secundum, Constitutional Law, § 48, p. 98. The amendment could reduce salaries without supplementary legislation, and did so in exact terms. By conferring on the legislative department the exclusive power to legislate, the people did not deprive themselves of doing so by and through the Constitution itself either in a new one or by means of an amendment to the old one.

The delegation of such power to the legislature, as done in the Constitu-

tion, is effective only so long as that delegation remains operative in that respect in the Constitution. It could be otherwise provided by a new Constitution or an amendment to the old one, and legislation can at any time be inserted in the Constitution itself by pursuing the method provided in it for amendments. A Constitution as prepared by a convention and adopted by the people often contains self executing matter primarily legislative in character. There is nothing in the situation which prevents that from being done in an amendment duly adopted as provided.

█ The city commission had prior to the election of appellant reduced the salaries of all city officers and employees in an amount less than that fixed by the Sparks' Amendment for the city commissioners, and it was on this basis that appellant received his compensation until after October 1, 1935. He then filed a claim for the difference between what he was paid and the amount fixed by the Act of 1923, supra. On July 27, 1937, by resolution of the city commission, it was ordered that he be paid an amount equal to the difference between the amount he had been paid and that fixed by the Sparks' Amendment, to-wit, $2,100.83. He is now claiming the difference between the sum fixed by that amendment and the sum fixed by the Act of 1923, supra. We think he is controlled by the Sparks' Amendment, and that since he has received all that is provided in it, he is not entitled to anything further.

### Cross-Assignments

The city commission, by cross-assignments, contends and argues that it should have been permitted under its plea to have a refund of the payment it made to appellant of $2,100.83, supra. This, for one reason that he had not complied with section 10 of the Act, which the parties call the "Omnibus Act," approved August 20, 1915. General Acts 1915, pages 294, 297. It requires all claims, except those enumerated, to be filed with the city clerk within one year after the accrual, or that they will be barred, and no claim can be sued on until ten days after filing the same.

█ The agreed facts show that the claim was filed October 2, 1935. Appellee argues that this was not in good faith since appellant was a member of the commission, and did not cause it to be acted on until July, 1937. We see no merit in that contention.

It is also insisted that some of the items accrued more than twelve months before the claim was filed, and that the statute barred them.

Another reason why it should not have been allowed in July, 1937, and paid by the city, as it contends, was that in receiving his salary warrant or check appellant signed a written acknowledgment that it was in full payment for services rendered for the period named. The argument is that the city was paying a claim which had no legal existence and was subject to recovery as for money had and received.

█ Section 10 of the Act of 1915, supra, is a modified form of section 1907, Code. Section 12 of the Act is akin to section 2031, Code. Sections 10 of the Act and 1907, Code, are non-claim acts which may be waived (see, Rikard v. O'Reilly, 232 Ala. 667, 169 So. 320), since they do not constitute a prerequisite to the right of recovery. Anderson v. City of Birmingham, 177 Ala. 302, 58 So. 256; Town of Linden v. American-La France & F. Ind., 232 Ala. 167, 167 So. 548; Howell v. City of Dothan, 234 Ala. 158, 174 So. 624.

█ But sections 12 of the Act and 2031, Code, are prerequisite to the right of recovery and cannot be waived by the city so as to estop it from defending a suit on that ground, when they have not been complied with. McCall v. City of Birmingham, 234 Ala. 164, 174 So. 630; Grambs v. City of Birmingham, 202 Ala. 490, 80 So. 874; Maise v. City of Gadsden, 232 Ala. 82, 166 So. 795.

█ But there is no law which prohibits a city from paying a claim not filed under either statute. In the absence of such prohibition the city can recognize a moral obligation founded on a just claim of substantial pecuniary right, and pay it, though no recovery might be available by suit at law. State v. Clements, 220 Ala. 515, 126 So. 162; Board of Revenue of Mobile v. Puckett, 227 Ala. 374, 149 So. 850; Board of Revenue of Jefferson v. Hewitt, 206 Ala. 405 (6), 90 So. 781; Moses v. Tigner, 232 Ala. 457, 168 So. 194. Compare Webb v. McGowan, 232 Ala. 374, 168 So. 199.

█ Section 10 of the Act, supra, is here applicable if either that or section 12 is so. It is more favorable than section 12 in this respect. In fact the claim was

186

filed within twelve months of many of its items. Whether that is a compliance as to some of them we need not inquire. The city could and did waive the requirements of section 10 by paying the claim, certainly to that extent. To the extent that it was not paid, the claim, as we are holding, was without legal support on other grounds. The city commission had no right to reduce the amount of a salary fixed by law. The fact that the officer accepts such reduced amount as in full payment is not a discharge of the obligation. Jeffers v. Whorton, 197 So. 358; Hamilton v. Edmonson, 235 Ala. 97, 177 So. 743. Compare Brassell v. Brandon, 223 Ala. 324, 135 So. 577. So that he had a claim of substantial pecuniary right in the amount paid by the city. It was not therefore in the status of a voluntary donation.

We do not wish to imply that such a claim for salary fixed by law payable to a public officer is subject to the non-claim statute. See, Hasty v. Marengo County Bank, 204 Ala. 229, 86 So. 37.

From every standpoint there appears to be no right in the city to recover from appellant the amount which was paid in July, 1937. It is shown to have been the true amount due him at that time. The city has no legal claim to it, and he has none against the city in respect to the transactions here pertinent.

On both original and cross-assignments of error, the judgment is affirmed.

Affirmed.

GARDNER, C. J., and BOULDIN, and LIVINGSTON, JJ., concur.