**OPINION OF THE JUSTICES.**

No. 140.

Supreme Court of Alabama.

July 11, 1955.

## Senate Resolution No. 2.

"Resolved By The Senate Of Alabama, that the Justices of the Supreme Court, or a majority of them, are respectfully requested to give this body their written opinions concerning the following important constitutional questions which have arisen in connection with S. 2, by Messrs. Lamberth, Flowers, et al, a bill for an act to provide for the calling of a. convention to revise and amend the Constitution of this State, which is now pending in the Legislature. A true copy of said bill is attached hereto and made a part of this resolution by reference.

"Question 1. Do the provisions of Section 20 of the bill, which purport to limit the proposed constitutional convention to a revision and an amendment of only such sections of the Constitution of 1901 as affect representation in the Legislature of Alabama, infringe on the proviso contained in Section 286 of the Constitution relating to the plenary jurisdiction and power of the convention, when duly assembled, 'To establish such ordinances and to do and perform such things as to the convention may seem necessary or proper for the purpose of altering, revising, or amending the existing Constitution'?

"Question 2. Would the provisions of Section 7 of the bill and of Section 286 of the Constitution authorize the convention to frame a completely new Constitution, notwithstanding the limitation contained in Section 20 of the bill?

"Question 3. If the bill is duly enacted and the convention called by vote of the people, would the provisions of Section 20 constitute a valid restriction on the power of the convention?

"Question 4. If the bill is duly enacted, could the provisions of Section 15 requiring submission of the constitution framed by the convention for ratification or rejection be disregarded, and a new constitution be adopted without submitting the same for ratification or rejection by a vote of the qualified voters?

"Question 5. If the bill is duly enacted, could the convention amend the sections of the existing constitution affecting representation in the Legislature without submitting the amendments to the voters for ratification or rejection?"

Senate Bill No. 2 is in pertinent part as follows:

## "A Bill

"To Be Entitled An Act To provide for the calling of a convention to revise and amend the constitution of this state.

"Section 1. Be it enacted by the Legislature of Alabama, that on Tuesday the 6th

day of September, 1955, an election shall be held in the several counties of this State, for the purpose of determining whether or not a convention shall be held to revise and amend the constitution of this state, and at that election the question of convention or no convention shall be submitted to a vote of the qualified electors of this State, and if a majority of the voters voting at said election shall approve of the holding of a convention for the purpose stated, said convention shall be held as hereinafter provided.

"Section 2. Be it further enacted, That, at the election provided by the first section of this act, every qualified elector who approves of the holding of such convention shall declare the same by depositing his ballot at the voting place where he may be entitled to vote by making a cross mark before the words 'for convention', written or printed, or partly written and partly printed, thereon, and every qualified voter of this State voting at said election, who disapproves of the holding of such convention, shall deposit his ballot, marked with a cross mark before the words 'no convention', written or printed, or partly written and partly printed thereon.

"Section 3. Be it further enacted that at the time of said election, delegates to such convention shall be elected as follows: * * *

"The names of the nominees for delegates from the counties respectively shall be put upon official ballots to be prepared for the purpose of the election, which shall be separate and distinct from the ballot on which is printed the words 'for convention' and 'no convention'. The names of all candidates to represent the county in which the voter lives shall be placed upon the official ballot from the county which the elector casts his vote, who may have been nominated in a primary election held for that purpose, as now provided by law for the nomination of candidates for county officers in the general election, said counties having more than one delegate, the delegates shall be nominated and elected for each separate place, which place shall be designated on the ballot by number. The voters shall express their choice of candidates from the county in which they live by making a cross mark before the names of the number of delegates to which such county may be entitled as provided herein. The official ballot containing the names of all candidates shall be prepared as official ballots are prepared in general elections. Above the names of the candidates shall be printed the words, 'for delegates to the Constitutional Convention from the County of ......, Vote for ...... delegates. One for each place', and in the first blank shall be printed the name of the county and the second blank, the number of delegates to which such county is entitled."

"Section 7. Be it further enacted, That if the holding of said convention be approved by the qualified electors of this State, as hereinbefore provided for, the delegates elected thereto shall convene in hall of the House of Representatives in the City of Montgomery, on Tuesday, the 4 day of October 1955, at twelve meridian of said day, and then and there proceed to organize said convention by the election of a president from among themselves, and such other officers (who need not be delegates) as said convention may deem necessary for the proper performance of the duty assigned to the convention. Said convention shall continue in session until it shall, by 'careful revision and amendment of the present constitution, frame and adopt a revised constitution for this State; Provided, that said convention may, in its discretion, adjourn to any other place it may see fit."

"Section 15. Be it further enacted, That in the event of the framing of such constitution by said convention, it shall be the duty of the governor, within one week after the filing of the same with the Secretary of State, to issue his proclamation, published as heretofore required for the proclamation to assemble the convention, to make known the fact that such constitution has been framed; and thereby require an election to be held in the several counties of this State, in the same manner and by the same officers as general elections are required to be held for the purpose of submitting to the qualified voters of this State for ratification or rejection of said constitution. This election

shall be held not less than twenty days nor more than sixty days after the date of said proclamation, and the date of said election shall be set forth in said proclamation."

. "Section 20. Be it further enacted, that if such convention be called and held it shall revise and amend only such sections of the Constitution of 1901 as affects representation in the Legislature of Alabama."

The Senate of Alabama
State Capitol
Montgomery, Alabama

Sirs:

We acknowledge receipt of your communication of April 15th enclosing a copy of proposed Senate Bill No. 2 and a resolution requesting advisory opinions of the Justices of the Supreme Court of Alabama relative to this proposed bill.

■ Your first question is answered, "Yes". Section 286 of the constitution provides that "No convention shall hereafter be held for the purpose of altering or amending the constitution of this state, unless after the legislature by a vote of a majority of all the members elected to each house has passed an act or resolution calling a convention for such purpose the question of convention or no convention shall be first submitted to a vote of all the qualified electors of the state, and approved by a majority of those voting at such election * * *; *provided, nothing herein contained shall be construed as restricting the jurisdiction and power. of the convention, when duly assembled in pursuance of this section, to establish such ordinances and to do and perform such things as to the convention may seem necessary or proper for the purpose of altering, revising, or amending the existing constitution."* .

It is our considered opinion that § 20 of Senate Bill 2 impinges on the proviso of § 286 of the constitution which has been set out and which has been italicized by us. We say this because § 20 of the proposed bill is contrary to the plain language and intent of the proviso in § 286 of the constitution. Furthermore, while not necessary to reach a conclusion, we feel fortified in this view when we look to the "history of the times, the existing order of things, and the state of the law when the instrument was adopted". Houston County v. Martin, 232 Ala. 511, 169 So. 13, 16.

The limitation in Senate Bill 2 on the power of the convention is incompatible with the intent of the proviso as determined from its language. The obvious policy of the Constitutional Convention of 1901 was to give a constitutional convention full power to do what it might consider necessary for the purpose of altering, revising or amending the existing constitution.

It should be remembered that § 286 provides the exclusive means by which a constitutional convention may be called by the legislature. This court has held that the constitution itself provides the exclusive mode by which it may be altered or amended or its effect and operation changed. Opinion of the Justices, 252 Ala. 205, 40 So.2d 623. In other words the method of making changes in the constitution is mandatory and exclusive. Downs v. City of Birmingham, 240 Ala. 177, 198 So. 231; Johnson v. Craft, 205 Ala. 386, 87 So. 375; Collier v. Frierson, 24 Ala. 100.

While, as we have said, our conclusion can be rested on the clear and unambiguous language of the proviso in § 286, a consideration of other matters sustains our view. We call attention to the history of the adoption of § 286. On the sixty-seventh day of the Constitutional Convention of 1901 it was moved that the convention proceed to consider Article XVII, section by section. Section 3, the present section 286, was finally reached. As read by the clerk it did not contain the present proviso. Mr. Weatherly stated, "I have an amendment." The secretary read the amendment which is the present proviso. The following is a transcript of the proceedings at this point (p. 3929).

"Mr. Weatherly. The purpose of the amendment is simply to set at rest—

"Mr. Weatherly. The Committee are willing to accept the amendment.

"Unanimous consent was given to accept the amendment.

"Upon a vote having been taken, the section as amended was adopted."

It is true that there was no explanation given for the proviso in the proceedings of the convention at the time of its introduction, but the reason for its passage is evident when considered in the light of § 2, Article XVII of the Constitution of 1875, providing for constitutional conventions and a proposed amendment to Article XVII, which was introduced in the convention prior to its adoption of § 286. Section 2 is as follows:

"No convention shall hereafter be held for the purpose of altering or amending the constitution of this state, unless the question of convention or no convention shall first be submitted to a vote of all the electors of the state and approved by a majority of those voting at said election."

Section 2 of Article XVII in no way describes the power of the convention called in accordance with its terms. However the proposed amendment introduced on May 28, 1901, attempted to impose such a limitation. We set out the pertinent part thereof as follows:

"Sec. 3. The General Assembly hereafter calling a constitutional convention, shall set forth in the act the purpose of the call, by naming the changes, amendments and additions to the then existing Constitution desired to be made which shall be published in the newspapers of the principal cities of the State within twenty days after the passage of the act."

The foregoing amendment which would limit the scope of a convention was referred to the Committee on Amending the Constitution and Miscellaneous Provisions. Vol. 1, pp. 132–133 of the Proceedings of the Constitutional Convention of 1901. Apparently the committee did not report it out favorably. See Vol. 1, pp. 1144–1145 of the aforesaid proceedings. Paragraph three of such report sets forth the substance of the present section 286 of the Constitution of 1901, except that the proviso clause of § 286 is not shown in such paragraph.

It seems reasonable that since an effort was made to insert a provision allowing the legislature to place a limitation on the powers of a constitutional convention, the proviso in the present § 286 was introduced by Mr. Weatherly on the floor of the convention and adopted so that there might be no doubt as to the convention's intent and desire that any constitutional convention called under the Constitution of 1901 would be free of limitations on its powers. See Vol. 3, pp. 3928–3929 of the Proceedings of the Convention of 1901; City of Montgomery v. Graham, 255 Ala. 685, 53 So.2d 363.

In studying the history of the times, certainly statements in the current press of the time can be considered. The proceedings of the Constitutional Convention of 1901 show that Mr. Weatherly introduced his proposed amendment to § 286 on August 9, 1901, and that was the date of its adoption. The files of newspapers in the Department of Archives and History of Alabama show that a report of the proceedings in the Convention on August 9th was reported in various newspapers in the state on August 10, 1901. These statements appeared in The Montgomery Advertiser, The Birmingham News, The Daily Ledger of Birmingham and the Daily Register of Mobile. In all of these newspapers in substantially similar language appears the following:

"Section 3 was read. It provides for the manner in which the Legislature shall provide for calling a Constitutional Convention. An amendment by Mr. Weatherly of Jefferson, giving future Constitutional Conventions unrestricted authority, was adopted and the amended section was adopted."

There is no doubt that the press of Alabama at the time considered that the amendment offered by Mr. Weatherly gave unrestricted authority to future constitutional conventions called under the Constitution of 1901.

Question 2. Question 2 we answer, "Yes". As shown in our answer to Senate Question No. 1, the answer to this question is controlled by the language of § 286 of

the constitution, which forbids the legislature to impose restrictions on the power of the convention to consider what it may deem necessary or proper in altering, revising or amending the constitution. Section 7 of the proposed bill contains the following language:

"* * * Said convention shall continue in session until it shall, by careful revision and amendment of the present constitution, frame and adopt a revised constitution for this State;

* * *."

This grant of power and authority to the convention is not limited. This section is clearly in conflict with Section 20 of Senate Bill No. 2, which attempts to impose a limitation on the power of the convention. It seems to us that the very title of Senate Bill No. 2 is in keeping with this thought. It reads as follows:

"To Be Entitled An Act To provide for the calling of a convention to revise and amend the constitution of this state. * * *"

This indicates that Section 7 of the bill rather than Section 20 correctly states the power of the convention. As Section 7 is in conformity with the requirements of § 286 of the constitution, the grant of authority contained in Section 7 is controlling of the power of the convention and the conflicting limitation in Section 20 is without force and effect.

■ Question No. 3. The answer to question No. 3 is "No". The proviso contained in § 286 determines the answer to the question. The legislature cannot impose a limitation on the power of a constitutional convention to consider any matters that the convention deems necessary and proper.

Respectfully submitted,

J. ED LIVINGSTON,
Chief Justice,
THOMAS S. LAWSON,
DAVIS F. STAKELY,
JOHN L. GOODWYN,
Justices.

Questions 4 and 5.

■ To the 4th and to the 5th questions we answer "no" to each question respectively. The provisions of § 15 of the proposed act requiring that the constitution framed by the convention be submitted to the people of Alabama for their ratification or rejection, cannot be disregarded. In Downs v. City of Birmingham, 240 Ala. 177, 198 So. 231, 234, this court said:

"True, a constitutional convention cannot enact a law to be effective without incorporating it in the Constitution for ratification by the people. Ex parte Birmingham & Atlantic Ry. Co., 145 Ala. 514, 42 So. 118. * * *"

In support of the foregoing statement the court cited Ex parte Birmingham & Atlantic Ry. Co., 145 Ala. 514, 42 So. 118. It is, therefore, not inappropriate for us to give consideration to the authority cited to support the statement which we have quoted.

In Ex parte Birmingham & Atlantic Ry. Co., supra, this court cited with approval the decision of the Pennsylvania Court in Wood's Appeal, 75 Pa. 59. The concluding paragraph of the quotation from the Pennsylvania Court is pertinent:

"* * * In conclusion, we find nothing in the Bill of Rights, in the vote under the Act of 1871, or the authority conferred in the Act of 1872, nothing in the nature of delegated power, or in the constitution of the convention itself, which can justify an assumption that a convention, so called, constituted, organized, and limited, can take from the people their sovereign right to ratify or reject a Constitution or ordinance framed by it, or can infuse present life and vigor into its work before its adoption by the people."

The Pennsylvania case involved a constitutional convention held under an enabling act which was silent on the question of ratification.

In Ex parte Birmingham & Atlantic Railway Co., supra [145 Ala. 514, 42 So. 122], this court also quoted with approval

from Judge Cooley in his work on Constitutional Limitations, as follows:

"'* * * But no body of representatives, unless specially clothed with power for that purpose by the people when choosing them, can rightfully make definite action upon amendments or revisions. They must submit the result of their deliberations to the people—who alone are law—for ratification or rejection. The constitutional convention is the representative of sovereignty only in a very qualified sense, and for the specific purpose and with the restricted authority to put in proper form the questions of amendment upon which the people are to pass; but the changes in the fundamental law of the state must be enacted by the people themselves.'"

From the reasoning and the holding of this court in Ex parte Birmingham & Atlantic Railway Co., supra, it appears to be conclusive that before an alteration, revision or amendment to the constitution can become effective either the people must authorize their representatives in the convention to make the change when choosing them or such change must be submitted to the people for their approval or rejection.

It is true that the Constitution of 1868 went into effect in Alabama after having been rejected by the people of the state at the election called for its ratification. The situation at that time should be distinguished from the present situation as is shown by the following language in Ex parte Birmingham & Atlantic Railway Co., supra:

"* * * This ordinance, however, was adopted by a convention assembled pursuant to a proclamation of the President of the United States, issued at a time when Alabama had no recognized civil government, and to enable the 'loyal people of the state to enact a Constitution to restore the state to its Constitutional relationship to the federal government.' The convention so assembled had to deal with new conditions, wrought by the termination of a long and bloody Civil War, which re-sulted in freeing from slavery nearly one-half of the people of the state. The exigencies of the times required prompt and immediate action in dealing with them, and a speedy enactment of laws to meet the changed conditions of our citizenship. Besides, the proclamation of the President in calling the convention into existence extended to it 'all the powers necessary and proper' to enable the loyal people of the state to formulate a plan of government that would meet said changed conditions, and at the same time restore our relationship to the federal government. The authorities generally except ordinances, even Constitutions, enacted in time of war, or upon the heels thereof, from the more rigid rule as applicable to those adopted in time of peace and tranquility."

We also note the situation with reference to the adoption of the Constitution of 1819. The authorities seem to agree that the adoption of a constitution when a state is first admitted to the union presents a different situation from that arising when a state undertakes to amend or change its existing constitution. More power is ordinarily assumed in such an original convention than in one later assembled in normal times. 158 A.L.R. 512; Wood's Appeal, 75 Pa. 59.

The Constitution of 1901 was, of course, submitted to and ratified by the people and was called by virtue of an Act of the Legislature of 1901, Acts 1900–01, p. 224. The case of Ex parte Birmingham & Atlantic Ry. Co., supra, involved an ordinance which would normally be termed local legislation, adopted by the convention of 1901 providing for an additional courthouse in each of the counties of St. Clair and Shelby. The ordinance was apparently not made a part of the constitution and was not ratified, since it was not submitted to the electorate for ratification with the proposed constitution. The court said:

"* * * The ordinance in question pertains in no way to an amendment or revision of the Constitution, and it was beyond the power of the convention to pass this ordinance, and it could

not become binding or of legal force without having been submitted to and ratified by the people. * * *"

Whatever may have been the course with respect to the adoption of some of the early constitutions of Alabama, we think it can be safely said that the present thought is that a constitutional convention cannot adopt a constitution without giving the people an opportunity for their approval or rejection.

Respectfully submitted,

ROBERT T. SIMPSON,
DAVIS F. STAKELY,
PELHAM J. MERRILL,
JAMES J. MAYFIELD,
Justices.

We concur in the foregoing answer to questions 4 and 5, except as to that part of the answer which deals with the authority conferred on representatives in the convention when they are chosen. We express no opinion on this matter because the questions propounded to us do not call for an answer.

J. ED LIVINGSTON,
Chief Justice,
THOMAS S. LAWSON,
Justice.

We agree that it should be the Opinion of the Justices that "the provisions of Section 15 of the bill requiring submission of the constitution framed by the convention for ratification or rejection" by the people could not be disregarded by the convention. That is a restriction or limitation put upon the convention by the legislature and undoubtedly this restriction would be in the minds of the electorate when they are faced with the question of "convention" or "no convention." When they vote upon the question, they do so with the assurance that the result of the deliberations of the convention, if called, will be submitted to them for ratification or rejection. Having agreed that this restriction is valid, why does it not follow that it is valid for the legislature to restrict the convention to the revision and amendment only of such sections of the constitution of 1901 as affect representation in the legislature? Some authorities which

have held one or more restrictions to be a valid exercise of the power of the legislature are: Jameson on Constitutional Conventions, 4th Ed., §§ 379–393; Opinion of Justices, 1833, 6 Cush., Mass., 573; Wells v. Bain, 1873, 75 Pa. 39, 15 Am.Rep. 563; In re Opinion to the Governor, 1935, 55 R.I. 56, 178 A. 433; Staples v. Gilmer, 1945, 183 Va. 613, 33 S.E.2d 49, 158 A.L.R. 495; Gaines v. O'Connell, 1947, 305 Ky. 397, 204 S.W.2d 425; City of Bessemer v. Birmingham Electric Co., 1949, 252 Ala. 171, 40 So. 2d 193(5).

Since this is an advisory opinion, and as such is not the opinion of the Supreme Court and binds neither the Justices nor the department requesting it, being merely advisory or consultative, State ex rel. Bozeman v. Hester, 260 Ala. 566, 72 So.2d 61, we feel inclined to make this statement. The many fine amicus curiae briefs we have received and our own discussions in consultation reveal that the "proviso" in Section 286 means many different things to different people, and it would seem to be an act of wisdom on the part of the legislature to submit to the people an amendment to Section 286, dispelling any doubt as to the limitations which can or cannot be placed on the convention by the legislature.

Respectfully submitted,

ROBERT T. SIMPSON,
PELHAM J. MERRILL,
JAMES J. MAYFIELD,
Justices.

Questions 4 and 5:

The proviso in § 286 is peculiar to the Alabama Constitution of 1901. It seems to me that the broad language there used indicates a clear purpose to give a convention, once duly assembled, full and complete authority to alter, revise or amend the Constitution, that is, to "change" or "modify" it or "to make a new" Constitution. Webster's New International Dictionary, 2nd Ed., pp. 76 ("alter"), 83 ("amend"), 2134 ("revise"). I do not see how there can be read into the proviso the requirement that any "alteration, revision or amendment", before becoming effective, must be approved by a vote of the people. The authority of a con-

vention is not just to *frame* or *propose* alterations, revisions and amendments, but to effectuate them. It seems to me that the people, in adopting the 1901 Constitution, thus confided to their elected delegates to a convention, when assembled in the manner prescribed by the Constitution, full and unrestricted authority to alter, revise and amend the Constitution. And that authority continues until the people withdraw it by changing the Constitution.

I do not think that what was said in Ex parte Birmingham & Atlantic Railway Co., 145 Ala. 514, 42 So. 118, is controlling here. In that case the court was dealing with a constitutional convention convened pursuant to the Constitution of 1875. There was no provision in that Constitution similar to the proviso in Section 286, Constitution 1901. Nor do I think that Downs v. City of Birmingham, 240 Ala. 177, 198 So. 231, is of controlling influence. No consideration was there given to the proviso in Section 286.

So far as I have been able to ascertain this is the first time that the meaning of the proviso in Section 286 has been presented to us for our opinion or decision.

I would answer questions 4 and 5, "Yes".

Respectfully submitted,

JOHN L. GOODWYN,
Justice.

In dealing with the proviso contained in § 286, my opinion has been expressed on the construction which I think should be given to the proviso as a part of the constitution. In considering the last sentence contained in § 284, in answer to another series of questions my opinion has been expressed on the power of the people to amend the constitution by removing this sentence from § 284. To me there is no conflict in this position because the one involves construction of the constitution as it is while the other involves the power of removal by the people of a part of the constitution by amendment.

DAVIS F. STAKELY,
Justice.